(Decided 16th April, 1869.)

## JOHN A. SMITH's Lessee *vs.* JOHN S. DEVECMON, and others.

*Commissioner of the Land Office—Power of the Legislature over the Public Lands, and over the Rules and Regulations of the Land Office—Caveat—Escheat Warrant.*

The first section of the 54th Article of the Code, makes the Commissioner of the Land Office a Court of Record, but the 7th Article of the Constitution of 1864, section 3, in providing for the election of that officer, leaves his powers and duties completely under the control of the Legislature; so that they may be changed or abrogated, and new duties imposed at its will and in its discretion. The Commissioner does not form any part of the Judiciary under the Constitution of 1864.

After the Revolution, the Legislature of this State succeeded to the rights of the Lord Proprietary over the Public Lands, to be exercised for the public good, and can dispose of them upon such terms, and under such regulations as it may deem proper and expedient, and can change, modify, or dispense with such rules and regulations in particular cases, according to its own notions of justice or expediency. The Legislature, therefore, has power to suspend or dispense with the rules of the Land Office, and to authorize and direct a patent to be issued.

Where a patent has already been issued to another party, all that is effected by such Act of the Legislature is to enable the person to whom it directs the new patent to be issued, to enter the Courts for the purpose of having the rights of himself and of the first patentee, under the respective patents, considered and determined.

Although a caveatee had a right of appeal under the Act of 1853, ch. 415, from the refusal of the Commissioner to issue a patent to him, the Legislature was not thereby deprived of its control over the Public Lands, or its power and authority to change, suspend, or modify the rules and regulations for their disposition, or to change the remedy of the caveatee by directing a patent to be issued to him, instead of requiring him to prosecute his appeal from the decision of the Commissioner of the Land Office.

The Legislature has no power to pass laws impairing or divesting vested rights, and laws which would have that effect, are void and inoperative.

A patent having been issued under the direction and authority of an Act of the Legislature, a subsequent Act cannot have the effect of divesting any rights acquired under the patent so issued.

From sections 24, 25 and 26, of Article 54 of the Code, it was evidently the intention of the Legislature, that he who made the first application for a warrant of re-survey or escheat warrant, should have priority over all others, upon his complying with the requirements of the law, and that when such a warrant once issued, no other warrant for the same land should be issued to any other person, within one year from its date.

An Escheat warrant is notice to all that it has been issued, to affect the land described in it.

The title of a party commences from the date of the Escheat warrant, and the patent, when granted, relates back to the date of the warrant.

A person taking out a subsequent warrant for the same land, can only take under his warrant, survey and patent, a defeasible title, liable to be defeated, upon a compliance with the requirements of the law by the party procuring the prior warrant, and the issuing of a patent to him.

APPEAL from the Circuit Court for Allegany County.

This was an action of *ejectment* brought by John A. Smith, the appellant, against the heirs of Thomas Devecmon.

The plaintiff claimed title under a patent issued March 1st, 1866, upon a special warrant of escheat, dated October 24th, 1862. The warrant was returned into the Land Office on the 19th of October, 1863, and on the 23d of the same month it was examined and passed, and the composition money paid. In the meantime, Thomas Devecmon, the ancestor of the defendant, had obtained a warrant of escheat for the same land, issued on the 14th of January, 1863, upon which a patent was issued to him on the 25th of September, 1863, and on the 21st of December, 1863, he filed a *caveat* to prevent the granting of a patent to Smith. The Commissioner of the Land Office sustained the *caveat*, and Smith then applied for and obtained an Act of the General Assembly, passed at the Extra Session of January, 1866, under which the patent of March 1st, 1866, was directed to be issued to him. The object of this suit was to test the validity of this latter patent. Subsequent to the institution of the suit an Act was passed (January Session, 1867, ch. 120,) repealing the Act of 1866, and declaring Smith's patent void. The Court below decided in favor of the defendants, and this appeal is taken from that decision.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER, and ROBINSON, J.

*George A. Pearre,* for the appellant:

The patent of Smith relates back to the escheat warrant, viz: 24th October, 1862. *McHenry on Ejectment,* 148, 150; *Dorsey on Ejectment,* 102, *(note,)* 86, 89, 90; *Jones vs. Badley,* 4 *Md. Ch. Dec.,* 167.

Smith having the elder warrant, and having made his survey, and paid his composition in the time allowed by law, Devecmon only acquired a *defeasible* title, liable to be de-

stroyed when Smith should obtain a patent for his land. *Kelley's Lessee vs. Greenfield*, 2 *H. & McH.*, 135 ; *Cunningham vs. Browning*, 1 *Bland*, 326.

According to the practice of the Land Office, the commissioner should have overruled Devecmon's *caveat*, and issued a patent to Smith. It was not even a case of doubt as against Smith, if he procured a patent. But if the commissioner did right in refusing a patent to Smith, according to the rules of the Land Office, the Legislature had the power to dispense with this rule in any particular case, if in its judgment it was expedient to do so. Since the Revolution, the State stands as to the public lands in the place of the Proprietary, for the public use and with all the same powers as was held by him, to be exercised for the public benefit. *Baltimore vs. McKim,* 3 *Bland,* 460 ; *Howard vs. Moale,* 2 *H. & J.,* 260.

Among these powers possessed by the Proprietary, and now by the State, was the power in any given case to dispense with the rules of the Land Office, to enable a *bona fide* purchaser to obtain a patent for the land intended to be bought by him, or if a patent should be improperly refused by the Chancellor, or because it could not be granted consistently with the rules of the Land Office, the Legislature would apply the remedy. *Baltimore vs. McKim*, 3 *Bland,* 460, 461, 462, 463, 464, 465 ; 1801, *Resolutions of General Assembly,* 2, 3, 4, 5, 6, 8 ; *Cunningham vs. Browning*, 1 *Bland*, 320.

The fact that an appeal was given from the decisions of the Commissioner of the Land Office, by the Act of 1853, chap. 415, did not take away from the Legislature the power to regulate, change or dispense with the rules of the Land Office. This Act enabled a party to pursue that remedy if he saw fit. It was merely cumulative.

In this State, notwithstanding the existence of general laws regulating appeals from the inferior judicial tribunals to the appellate tribunals, the exercise by the Legislature of the power of granting appeals under circumstances, and in cases where the right of appeal did not exist, or was lost under the

general law, has been frequently decided to be within its constitutional powers. *Berrett vs. Oliver,* 7 *G. & J.,* 206, 207 ; *Sampeyreac & Stewart vs. United States,* 7 *Peters,* 237, 238, 239 ; *Calvert vs. Williams,* 10 *Md.,* 478 ; *Balto. and Susq. R. R. Co. vs. Nesbitt,* 10 *Howard,* 399, 400, 401 ; *Cooley on Constitutional Limitations,* 357.

The Act of 1867, chap. 120, is void and unconstitutional, because it undertakes to declare Smith's patent void, which was granted before the Act was passed. It violated the contract with Smith. *Fletcher vs. Peck,* 6 *Cranch,* 131 ; *Terrett, vs. Taylor,* 9 *Cranch,* 50.

*William Walsh,* for the appellees :

By the Constitution and laws, the Commissioner of the Land Office is a Judge, and acts as such in all controversies relating to issuing patents for lands. *Constitution* 1864, *Art.* 7, *sec.* 3 ; *Code, Art.* 54, *secs.* 1, 2, 3, 4, 5, 13, 14, 15, 32, 33, 35 ; *Act of* 1853, *ch.* 415.

An appeal lies from his decisions to the Court of Appeals. Code, Art. 5, sec. 46 and 47, being the Act of 1853, ch. 415, sec. 4. Prior to this Act no appeal lay from the decisions of the Chancellor, as Judge of the Land Office, which was the reason the patent was granted in doubtful *caveat* cases. *Dorothy vs. Hilert,* 9 *Md.,* 570 ; *Chapman vs. Hoskins,* 2 *Md. Ch. Dec.,* 495 ; *Cunningham vs. Browning,* 1 *Bland,* 320 ; *Railroad vs. Hoye,* 2 *Bland,* 263. But a second patent is never granted for the same land, if known to be the same. *Steyer vs. Hoye et al.,* 12 *G. & J.,* 227. Devecmon's patent is a contract protected by the Constitution of the United States. *Fletcher vs. Peck,* 6 *Cranch,* 133 ; *Green vs. Biddle,* 8 *Wheat,* 1 ; *Baltimore and Ohio Railroad Company vs. The Canal Company,* 4 *G. & J.,* 146.

The Land Office being a judicial tribunal in cases of *caveats,* with the right of appeal to this Court, the Act of 1866, ch. 93, was a legislative encroachment on the judicial power, and is void. *Prout, et al. vs. Berry and wife,* 12 *G. & J.,* 286, *and*

2 *Gill,* 147 ; *Crane vs. McGennis,* 1 *G. & J.,* 463 ; *Lawrence vs. Hicks,* 8 *G. & J.,* 387 ; *Miller vs. State, use of Fiery,* 8 *Gill,* 145 ; *Thistle vs. The Frostburg Coal Co.,* 10 *Md.,* 129.

The relation of an escheat patent is to the *original patent* for the tract. Devecmon's patent related back to the original patent, and vested him *eo instanti* with that title. That was the effect of his patent. Can Smith's subsequent patent divest that original title by a *double* relation, relation to his escheat warrant, and relation of his patent to the original title which Devecmon had previously acquired. *Bladen vs. Cockey,* 1 *H. & McH.,* 230 ; *McHenry on Ejectment,* 150. Smith should, have *caveated,* and his not doing so is *laches* and prevents relation. *Steyer vs. Hoye,* 12 *Gill & Johns,* 227.

GRASON, J., delivered the opinion of the Court.

The question presented for the consideration of this Court, arises upon the prayer of the appellant, which was rejected by the Court below. That question is, whether the title to the land in dispute in this cause, was vested in the appellant under the patent granted to him on the first day of March, 1866, under the authority and direction of the Act of 1866, ch. 93, or in Thomas Devecmon under the patent issued to him on the 25th day of September, 1863.

It was contended, on behalf of the appellees, that the Act of 1866, ch. 93, was void and of no effect, because it was an encroachment upon the powers of the judicial department of the government; because it interfered with the vested rights of Thomas Devecmon under his patent; because, there being an appeal allowed from the decision of the Commissioner of the Land Office by the Act of 1853, ch. 415, the Legislature had no power to enact it, but that the appellant's only remedy was by appeal from the decision of the Commissioner of the Land Office, and because that Act was repealed by the Act of 1867, ch. 120, which declared the patent of the appellant void.

It is true that the 1st section of the 54th Article of the Code makes the Commissioner of the Land Office a Court of

Record, but the 7th Article of the Constitution of 1864, section 3, in providing for the election of that officer, leaves his powers and duties completely under the control of the Legislature, so that they may be changed or abrogated, and new duties imposed at its will and in its discretion. That officer does not form part of the judiciary under the Constitution of 1864, to which we must look in the examination of this question, and, therefore, the authorities cited by the appellant's counsel in support of this branch of his argument, do not apply. After the revolution, the Legislature of this State succeeded to the rights of the Lord Proprietary over the public lands, to be exercised for the public good, and can dispose of them upon such terms, and under such regulations as it may deem proper and expedient, and can change, modify, or dispense with such rules and regulations, in particular cases, according to its own notions of justice or expediency. *Baltimore vs. McKim*, 3 *Bland*, 460; *Cunningham vs. Brown*, 1 *Bland*, 320; *Howard vs. Moale*, 2 *H. & J.*, 260. The Legislature, therefore, had power to suspend or dispense with the rules of the Land Office, and to authorize and direct a patent to be issued to the appellant.

The Act of 1866, ch. 93, did not attempt, or profess to annul, or, in any manner, interfere with the patent of Thomas Devecmon, or to impair any rights he may have acquired thereunder, but left them, if his patent gave him any, unimpaired and enforcible in the Courts. All that was effected, or intended to be effected, by the Act of 1866, ch. 93, was to authorize a patent to be issued to the appellant so as to enable him to enter the Courts for the purpose of having the rights of himself and of the appellees, under the respective patents, considered and determined. It was the well established practice of the Chancellor, as Judge of the Land Office, where there were two applicants for patents, to issue patents to both, in cases of doubt, so as to place them in a position to have their rights determined by the Courts, *Baltimore vs. McKim*, 3 *Bland*, 465, and the Act of 1866 does no more. It is true

that, when the Commissioner of the Land Office sustained the *caveat* filed by Thomas Devecmon, and decided against the claim of the appellant for a patent, an appeal from that decision could have been prosecuted under the Act of 1853, ch. 415. But it does not follow that, because that right of appeal existed, the Legislature was, therefore, deprived of its control over the public lands, or its power and authority to change, suspend, or modify the rules and regulations for their disposition, or to change the remedy of the appellant by directing a patent to be issued to him, instead of requiring him to prosecute his appeal from the decision of the Commissioner of the Land Office. The contrary principle was fully recognized and enforced by this Court in the case of *Wright vs. Wright,* 2 *Md.,* 448, 449. By the Acts of 1841, ch. 362, and 1844, ch. 306, jurisdiction was given to the Courts in all cases of applications for divorces, and in the case of *Wright vs. Wright,* it was contended that the Act of 1849, by which the parties had been divorced, was an exercise of judicial power by the Legislature, and, consequently, void. In that case also, as in this, it was urged that the Act was of no force and validity, because it had been passed without notice to the parties to be affected by it. But it was held that the grant of jurisdiction to the Courts in applications for divorces did not deprive the Legislature of the right to grant divorces, but that it was competent for that body to repeal the Acts of 1841 and 1844 in a whole or in part, or to suspend, for a time, their operation. There cannot, therefore, exist a doubt that the Legislature, notwithstanding the Act of 1853, ch. 415, had the right to pass the Act of 1866, ch. 93, directing the Commissioner of the Land Office to issue a patent to the appellant, the effect being a repeal, *pro tanto,* of the Act of 1853. It next becomes necessary to inquire, whether the Legislature had power to pass the Act of 1867, ch. 120, by which it was intended that the Act of 1866 should be repealed, and the patent, issued to the appellant, annulled. At the date of the passage of the Act of 1867, the patent of the

appellant had been issued, and the powers, conferred by the Act of 1866, had been exercised and exhausted. If the patent, issued under its direction, conferred any rights upon the appellant, they had become vested, and he had instituted his suit against the appllees to recover the land described in his patent. The Legislature has no power to pass laws impairing or divesting vested rights—and laws, which would have that effect, are void and inoperative. The Act of 1867, ch. 120, is such a law, and is, therefore, void, and cannot affect the patent of the appellant.

The only remaining question is, whether the title to the land in dispute, vested in Thos. Devecmon, under his patent of the 25th September, 1863, or in the appellant, by virtue of his patent, dated the 1st day of March, 1866.

Under the 24th section of the 54th Article of the Code, any one may obtain an escheat warrant by application to the Commissioner of the Land Office, "*unless some other person has obtained, or is entitled to a warrant for the same land.*" By section 25, any escheat warrant must be executed within twelve months from its date; and section 26 provides that any person who has obtained a warrant to re-survey or escheat lands, shall, within one year from its date, unless the same be renewed, pay for the land included in the certificate of the survey.

From these provisions of the Code, it was evidently the intention of the Legislature that he who made the first application for a warrant of re-survey or escheat warrant, should have priority over all others, upon his complying with the requirements of the law, and that when such a warrant once issued, no other warrant for the same land should be issued to any other person within one year from its date.

The Commissioner of the Land Office, being by law a Court of Record, the escheat warrant to the appellant was notice to all that it had been issued to him, to affect the land described in it, and Thomas Devecmon is presumed to have had notice of it, even if he did not have actual notice at the time he

obtained his warrant in January, 1863, and that it was to affect the tract of land called "White Oak Bottom," in Allegany county. *Hoye vs. Johnson,* 2 *Gill,* 317; *Cunningham vs. Brown,* 1 *Bland,* 326. The warrant to Thomas Devecmon was, therefore, issued in violation of the provisions of the Code and of the contract between the State and the appellant, by which the State was pledged to sell that land to no other person than the appellant within one year from the date of his warrant. *Cunningham vs. Brown,* 1 *Bland,* 326. In that case, as well as in the case of *Owings vs. Norwood,* 2 *H. & J.,* 103, it was held that the title of a party commenced from the date of an escheat warrant, and that the patent, when granted, related back to the date of the warrant.

There can, therefore, be no question of the fact that the title of the appellant to the land in controversy commenced from the date of his warrant, on the 24th October, 1862, before Thomas Devecmon applied for his warrant. The latter could only take, under his warrant, survey and patent, a defeasible title, liable to be defeated, upon a compliance with the requirements of the law by the appellant and the issuing of a patent to him. All that was required to be done by the appellant, was performed by him within the prescribed time, and he, therefore, became entitled to his patent. This he did not obtain until the 1st day of March, 1866, and, when thus obtained, it related back to the 24th October, 1862, from which date his title to the land described in his patent, is now to be considered as perfect. No title, therefore, could, or ever did, vest in Thomas Devecmon, and consequently there is no title in the appellees. The Court below erred in rejecting the appellant's prayer, which ought to have been granted, and its judgment must be reversed, and judgment entered in this Court for the appellant.

*Judgment reversed and*
*judgment for the appellant.*

(Decided 22d April, 1869.)