Koch and Keller *vs.* Maryland Coal Co.

(Decided 16th December, 1887.)

WILLIAM H. KOCH, and JOHN J. KELLER *vs.* THE MARYLAND COAL COMPANY.

*Patent for Land—Special proclamation Warrant—Title to Land—Instruction to Jury—Doctrine of Relation—Common warrant—Certificate of Surveyor.*

In an action of trespass *quare clausum fregit,* the title to the *locus in quo* was claimed by the plaintiffs under a patent for " Republic," dated the 5th of September, 1796, that purported to have been granted on a certificate of resurvey made and returned to the Land Office on the 10th of March, 1794. The defendant claimed title under a patent for a tract of land called " Mount Pisgah," dated the 15th of July, 1795, but the certificate on which it was granted was not made and returned into the Land Office until the 29th of September, 1794. Both patents, however, were issued under special proclamation warrants ; that for " Mount Pisgah," being dated the 4th of October, 1793, and that for " Republic," the 21st of March, 1794. HELD :

That the defendant had the superior title to the land in dispute, as under a special warrant, which on its face designates and describes the particular land intended to be affected, the title begins with the date of the warrant.

Where on the trial of an action of trespass *quare clausum fregit,* for mining coal on the location of the plaintiffs, they, after offering in evidence their title papers, gave evidence tending to prove that they were correctly located on the plats, and that the defendant had mined coal within the lines of their tract as so located, and proved

that all of said places of alleged trespass were within the lines of the defendant's tract as located by it, and where the two tracts lay foul of each other as located on the plats, a prayer by the defendant that instructed the jury that if they found the issual of the warrant and patent for the tract of the defendant, and the mesne conveyances and facts as to the derivation of title thereto to the defendant, then their verdict must be for the defendant, was not defective, because it assumed that the defendant's location of the place of the trespass as within the lines of said tract was correct, the plaintiffs having themselves proved and admitted the correctness of such location.

The doctrine of relation is founded on common law principles, and under it the title begins with the first authoritative and certain designation or description of the particular tract of land intended to be taken up.

In the case of a common warrant, that simply directs the surveyor to lay out a specified quantity of land, anywhere, without regard to any particular space or tract, the certificate of the surveyor first contains the requisite description or designation, and the title commences from the date of such certificate. But in case of special warrants that on their face designate and describe the particular land intended to be affected, the title begins with the date of the warrant.

APPEAL from the Circuit Court for Garrett County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, IRVING, and BRYAN, J.

*William Brace,* and *Benjamin A. Richmond,* for the appellants.

The second prayer of the defendant relied alone on the defence of legal title. It instructed the jury that if they found that certain patents and deeds had been executed, the plaintiffs could not recover, without any reference whatever to the correctness or incorrectness of their location on the plats. The granting of the first, second and third prayers left nothing to be argued to the jury on

location, and, in short, took the case from the jury. In this there was manifest error. Art. 64, sec. 26, of Revised Code ; *Clary vs. Kimmell,* 18 *Md.,* 246.

The title of the plaintiffs, under their patent, relates to the "date of their certificate ;" the title of the defendant to "Mount Pisgah" relates to the date of "its" certificate, and as the certificate of "Republic" is six months older than that of "Mount Pisgah," the patent for "Republic" is a superior and senior title. Titles, under patents, relate to the dates of their certificates of survey and not to the dates of the warrants. *Garretson vs. Cole,* 2 *H. & McH.,* 459 ; *Ringgold vs. Malott,* 1 *H. & J.,* 317 ; *Peter vs. Mains,* 4 *H. & McH.,* 428 ; *Steuart vs. Mason,* 3 *H. & J.,* 507 ; *West vs. Hughes,* 1 *H. & J.,* 6.

The "reason" in any case why the title under the patent is carried back by relation to the certificate is an equitable one, based upon the idea that when the certificate is made and filed in the Land Office, the holder of the warrant thus has an equitable title to the land returned in the survey, which equitable title he has subsequently perfected in the legal one of the patent. It is conceded by the appellee that this relation does not go back to the date of the warrant in the case of *common* warrants, but it is contended that it must do so in the case of a proclamation warrant. But if that is so, why does not the relation go back to the date of the common warrant also ? It does not relate back to the warrant because the warrant does nothing, confers nothing, defines nothing. Under it a man may survey one acre or a thousand acres. The public are not informed by the record of the issuing of the warrant, whether the holder will take up much or little land. The whole extent of the land which he will subsequently acquire under it is as yet uncertain and undefined.

Now, if that be so under a common warrant, and no relation can go back beyond the *certificate,* why is it not also true of a proclamation warrant? It is true, a procla-

mation warrant is based on a former survey, and it might be said that the boundaries of land are, to some extent, defined already, were the proclamation warrant issued. But it has been decided by this Court that under a proclamation warrant the title cannot relate back even to the *date of the certificate* of the *original survey* on which the proclamation warrant was issued. *Attorney-General vs. Snowden*, 1 *H. & J.*, 332.

*William Walsh*, for the appellee.

· Title under proclamation warrants, and all warrants which specifically describe the land, or are entitled to the privilege of contiguous vacancy, commences at the date of the warrant, where the warrant has been subsequently executed and composition paid according to law. This applies to contiguous vacancy, as well as to the land described in the proclamated certificate and proclamation warrant. *Kilty's Landholder*, 275, 309, 319, 469, 473, 480, 486; *Dorsey on Eject.*, 98, 103, *and notes;* 1 *H. & J.*, 332, *and* 2 *H. & J.*, 132, 151; 2 *H. & McH.*, 460, *and Brantley's notes;* 1 *Bl.*, 310, 325, *&c.;* 1 *Gill*, 201; 2 *Gill*, 291: 30 *Md.*, 474.

Relation goes to the date of the special warrant, and not to the certificate, except where the party had no right to the special warrant, or included vacancy not contiguous, or otherwise violated the law. In such case the special warrant acts as a common warrant, and will bind the land from the date of the certificate. 2 *H. & J.*, 131, 151; 21 *Md.*, 135.

MILLER, J., delivered the opinion of the Court.

This action of trespass *quare clausum fregit* was brought by the appellants against the appellee. The trespass complained of consisted in mining coal on part of a tract of land called "*Republic.*" Title to the *locus in quo* was claimed by the plaintiffs under the patent for "Republic,"

and by the defendant under a patent for a tract called "*Mount Pisgah.*"

Defence on warrant was taken, under which locations were made by both parties and plats returned by the surveyor. At the trial after the evidence on both sides was closed, the plaintiffs asked for two and the defendant for seven instructions to the jury. The Court granted both of those asked by the plaintiffs and also the first, second, third, fifth, and sixth of those asked by the defendant, and rejected its fourth and seventh. The plaintiffs excepted to the granting of the defendant's prayers, and specially objected to the first, second, and third upon the grounds that there was no evidence to sustain them, that they assumed facts, and submitted questions of law to the jury. The verdict was for the defendant and the plaintiffs have appealed.

The defendant's second prayer places its defence entirely upon paper title, and tells the jury that if they find the issual of the warrant and patent for "*Mount Pisgah,*" and the *mesne* conveyances and facts as to the derivation of title thereto to the defendant, then their verdict must be for the defendant. The first and third also set up title by possession in the defendant and those under whom they claim, but it is needless to consider them if we hold that the defendant's paper title is better than that of the plaintiffs, because the latter rely upon their paper title derived under the patent for "Republic," and have offered no evidence tending to show that they ever acquired title to the *locus in quo* by possession. The whole controversy therefore depends upon whether the Court was right in granting this second prayer.

It has been argued by counsel for the appellants that this prayer is defective because it assumes that the defendant's location of the place of the trespass as within the lines of "Mount Pisgah" is correct. This would be a serious objection to the prayer if the plaintiffs had not themselves

proved and *admitted* the correctness of this location, and if we could see from the record that there was any dispute upon this point. But the exception shows that the plaintiffs, after offering in evidence their title papers, gave evidence tending to prove that they were correctly located on the plats, and that the defendant had mined coal within the lines of their part of "Republic" as so located, "[all of said places of alleged trespass being also within the lines of defendant's tract called "Mount Pisgah" as located by it, and where the two said tracts *lie foul of each other* as located on the plats,"] and then rested their case. What is thus stated in brackets was part of the plaintiffs' own proof, and is a clear admission by them, that the lines of the two tracts were "foul of each other," at the place of the alleged trespass. The only other reference to locations found in the exception is, that the defendant offered evidence tending to prove that all its title papers were correctly located on the plats. From all this it seems to us to be very clear that there was no controversy about the correctness of the locations on both sides, and the plaintiffs cannot object to this prayer on the ground that it assumes a fact which they themselves had proved and admitted to be true.

The question then is, which is the superior title, that derived under the patent for "Republic," or that derived under the patent for "Mount Pisgah?" The patent for "Republic" bears date the 5th of September, 1796, but purports to have been granted on a *certificate* of resurvey made and returned to the Land Office on the 10th of March, 1794. The patent of "Mount Pisgah" is dated the 15th of July, 1795, but the certificate on which it was granted was not made and returned into the Land Office, until the 29th of September, 1794, more than six months after the return of the certificate of "Republic."

In this state of facts the appellants contend that the title under their patent relates back to the date of their certifi-

cate, which is older than that for " Mount Pisgah," and therefore they have the better title. If there were no other objections to their title, and if the patents for these two tracts had been issued under common warrants, and the composition money had been duly paid under the elder certificate, there could be no doubt as to the correctness of their contention. *Dorsey on Ejectment*, 98, *note* 1, and cases there cited. But both these patents were issued under special proclamation warrants, that for " Mount Pisgah " being dated the 4th of October, 1793, and that for "Republic," the 21st of March, 1794, and the appellee contends that the doctrine of relation carries, in such cases, the title back to the date of the warrant, and it therefore has the superior title.

This difference as to the operation of the doctrine of relation in cases of patents under special warrants which specifically describe the land, was very clearly laid down by the *Chancellor* in the case of *Cunningham vs. Browning,* 1 *Bland,* 299, where the whole Land System of the State and the practice of the Land Office, are reviewed in a very able and elaborate opinion. " It is a well settled general rule, (says the Chancellor) that under a special warrant the title to the land commences from the date of the warrant itself; because the description of its location, embodied in the warrant, has distinguished it from every other tract. The warrant is, therefore, in itself equivalent to a designation by an actual survey. So too the title commences with the date of a warrant of resurvey, and of an escheat, or a proclamation warrant. But upon a common warrant it only commences with the date of the certificate of survey; or from the date of the entry of a special location upon the surveyor's book. The land aimed at becomes thus bound, because of its having been by some of these modes accurately described and distinctly specified. The reason of the rule is the same in all these cases, and the evils to be avoided alike in all." 1 *Bland,* 326. The decisions of

the Chancellor, as Judge of the Land Office, have always been held by the profession as of high authority in all matters pertaining to the ejectment law of the State.    This decision was made more than half a century ago, and we believe it has ever since been accepted by ejectment lawyers as founded in sound reason, and as stating the correct rule on this subject.    Again in the *notes* by *Mr. Gill* to the Lectures of Judge DORSEY on the action of ejectment in Maryland, which is also a work of high authority in this State, the same distinction is made and the same rule laid down.    *Dorsey on Ejectment,* 103.

The precise question now before us as to the effect of a proclamation warrant has never been decided by the Court of Appeals; but in *Smith's Lessee vs. Devecmon,* 30 *Md.,* 473, the case of *Cunningham vs. Browning* is referred to with approval, and it was there said by this Court that "in that case as well as in the case of *Owings vs. Norwood,* 1 *H. & J.,* 103, it was held that the title of a party commenced from the date of an escheat warrant, and that the patent when granted related back to the date of the warrant."

We agree with the Chancellor that this doctrine of relation is founded on common law principles, and that under it the title begins with the first authoritative and certain designation or description of the particular tract of land intended to be taken up.    In the case of a common warrant which simply directs the surveyor to lay out a specified quantity of land, any where, without regard to any particular space or tract, the certificate of the surveyor first contains the requisite description or designation, and the title commences from the date of such certificate. But in case of special warrants which on their face designate and describe the particular land intended to be affected, the title begins with the date of the warrant. In all cases however the party in order to invoke successfully the doctrine, must comply with the law and the rules

of the Land Office by duly paying the composition or caution money. Such we understand to be the general rules on this subject, as settled by ample authority.

It follows from what has been said that in our opinion the appellee has the better title to the land in dispute, and this, as it seems to us, disposes of the present appeal.

*Judgment affirmed.*

