## COURT OF APPEALS, NOV. TERM, 1804.

### WEST *vs.* JARRETT.

*The decisions of the chancellor as judge of the land office, are not conclusive, but may be reviewed in the court of chancery by original bill.*

APPEAL from a decree of the Court of Chancery *dismissing* the bill of complaint.

The bill stated, that one *Robert Mooberry* was possessed, by virtue of a license from the agents of the Lord Proprietary, and a certificate of survey on the same, of a parcel of land lying within the reserves of Harford county, containing 300 acres; and that being so possessed, after the act for confiscating British property, and appointing commissioners to take care of and dispose of the same, a certain *Mordecai Amos* was appointed by the said commissioners to value and appraise to the settlers thereon, that part of the said reserves, in which the land of the said *Mooberry* had

been located. That 300 acres of said land was appraised by *Amos* to one *John Welch,* acting for *Mooberry,* who was absent at the time of the appraisement. That these reserves were afterwards directed to be sold to the settlers under the direction of the intendant of the revenue of the state. That the intendant gave notice, &c. and attended. That the defendant and *Mooberry* claimed the land, and that the intendant appointed disinterested persons to hear the allegations of the parties, to ascertain to whom the right of pre-emption in their opinion belonged, and to report a state of facts to him. That the persons so appointed, after hearing the allegations, &c. adjudged that the land, (for which *Mooberry* afterwards returned a certificate to the land office called *Norfolk,*) did of right belong to *Mooberry.* That the only contention at that time between said *Jarrett* and *Mooberry* was, whether a tract of land patented to *Jarrett's* father, and called *Buchanan's Deer Park,* included the land possessed by *Mooberry,* and which he held under a certificate right; and it was then determined, "that "*Jarrett* should hold all the land included within the "lines of the said patent, and that *Mooberry* should hold "all such land as was included within his certificate, "and which was not within the lines of the said *Jar-* "*rett's* patent." Which decision was then assented to and confirmed by the intendant, and *Mooberry* then became the purchaser of 300 acres of land more or less, and gave bond, with security, for the same, at the price then agreed on, and obtained a certificate of his purchase from the intendant. That *Jarrett* at the same time purchased his lands called *The Hills of Poverty,* containing 1500 acres, which he did not even intimate covered any part of the land claimed and purchased by *Mooberry;* because he well knew that the possessory right by which he claimed *The Hills of Poverty,* was of a later date than the possessory right by which *Mooberry* claimed his land; that is, the certificate of survey made on *The Hills of Poverty,* under the authority of the proprietary agents, was of a subsequent date by several years to that made, by

the same authority, for *Mooberry*. That *Jarrett;* notwithstanding, returned a survey on his certificate of *The Hi'ls of Poverty*, and called the land so surveyed, *Contestable Manor*, which survey included *Mooberry's* said land called *Norfolk*. That *Mooberry* entered a caveat to this certificate of survey called *Contestable Manor*. That being a poor man, he could not pay, but was sued for the purchase money due the state, and the complainant became his special bail. That *Mooberry* removed to Pennsylvania, and the complainant, having paid the state, obtained an assignment from *Mooberry* of his said certificate. That on the trial of the caveat before the judge of the land office, owing to want of information of the complainant relative to the transactions, and owing to the misrepresentations of *Jarrett*, the caveat was overruled by the chancellor as judge of the land office.

The bill concluded with a prayer for a decree to preclude *Jarrett* from obtaining a patent upon his certificate of *Contestable Manor*, until he excludes the land purchased by *Mooberry* and called *Norfolk*.

The answer contained a general denial of all the material facts alleged in the bill.

A variety of proof taken in the cause was exhibited, as also that which had been taken on the trial of the caveat.

HANSON, Chancellor, (June term 1801.) A very important point has been made by the defendant's counsel, viz. "That the cause has in effect been already decided by a tribunal competent to decide fully on law and equity, and therefore this court, having no authority to examine the merits of that decision by way of appeal, and being applied to by an original suit, ought to consider itself as concluded by that decision."

The chancellor considers himself under no necessity to decide; and therefore does not decide on that point. He is of opinion, that although the complainant had probable grounds for instituting his suit, he has not shewn himself fully entitled to the relief prayed. He has not, in short, satisfied the chancellor

that he had an equitable claim to the land comprehended in the defendant's patent of *Contestable Manor*, and that when the defendant obtained his patent, he was apprised of the said equitable claim. *Decreed,* that the bill be dismissed without costs. From which decree the complainant appealed to this court.

Nov 1804.<br>West<br>vs<br>Jarrett

*Key* and *Shaaff,* for the Appellant. The chancellor as judge of the land office refused *West* a patent. He filed his bill in the court of chancery, and the chancellor decreed against him. The reserves of the Proprietary were leased out on long leases. After the revolution the property belonging to the Lord Proprietary was confiscated to the state. By the act of *April* 1782, *ch.* 59, settlers were to have a preference and pre-emption allowed them of the reserve lands upon which they had settled. *Jarrett* claimed under a patent for *Buchanan's Deer Park,* which did not interfere with *Mooberry's* land. *West* claims under *Mooberry.* The chancellor as judge of the land office was not satisfied that *West* had an equitable claim, and that *Jarrett* had notice of *West's* claim

The question is, whether or not the determination of the chancellor, as judge of the land office, is conclusive, and whether or not this court is competent to revise the decision of the chancellor as judge of the land office?

The act of *November* 1781, *ch.* 20, opens the land office, and vests powers in the chancellor as judge of that office. The determination of the chancellor is not conclusive. 1 *Burr.* 1005. *Evan's Essays,* 62. The act of 1785, *ch.* 56, gives the chancellor a summary jurisdiction.

A decree obtained by fraud may be set aside on an original bill—*Com. Dig.* 109. *Eq. Ab.* 19.

*Martin,* (Attorney General) and *Johnson,* for the Appellee, cited *Powell,* 221, and the acts of 1785, *ch.* 68, *s.* 8, and 1789, *ch.* 35, *s.* 4.

Nov. 1804

West
vs
Jarrett

THE COURT OF APPEALS, [*Rumsey*, Ch. J. *Jones* and *Dennis*, Judges.] *Reversed* the decree of the court of chancery, and decreed that the appellee, by a good deed of bargain and sale duly executed, &c. convey to the appellant, and his heirs and assigns, all that tract of land called *Norfolk*, lying in the reserves of Harford county, the certificate of which was made out for *Robert Mooberry*, by him assigned to the appellant, and is now in the land office, and all the estate, &c. of the said appellee, to any land included within the lines of the said certificate called *Norfolk*, and not included in an elder grant called *Buchanan's Deer Park*; and that the appellant have, hold and enjoy, all the land within the lines of the said certificate called *Norfolk*, to him and his heirs, except, &c. free and clear of the said appellee and his heirs, &c. and that the chancellor pass such order, &c.