1324

ROBERT M. WYNN, PROSECUTOR, v. CITY OF MARGATE
CITY, DEFENDANT.

Argued May 15, 1931—Decided December 3, 1931.

Before Justices TRENCHARD, DALY and DONGES.

For the prosecutor, *Cole & Cole.*

For the defendant, *Enoch A. Higbee, Jr.*

PER CURIAM.

The prosecutor of this writ was convicted of a violation of section 14 of the zoning ordinance of Margate City. He brings up such proceeding and conviction for review. He is the owner of a lot by deed dated June 1st, 1926, from Lawton Roorbach and Hazel Roorbach, his wife, to himself and wife, as tenants by the entirety, and described as all that certain lot, tract, or parcel of land and premises, situate, lying and being in the city of Margate City, county of Atlantic and State of New Jersey, known as lot 20, block 57 on plan of Margate Park, and also as lot 20, block 623A on tax map of Margate City. The lot had a width of thirty-two feet and a depth of one hundred feet, and is located within the dwelling zone. The lot is partly dry land and partly land over which flows the tidal waters of Beach Thoroughfare.

Prior to the passage of the zoning ordinance, there was erected upon this lot a frame dwelling house, part of which

dwelling house was on dry land, and part of which dwelling house was on pilings over that portion of the lot covered by water.

On September 18th, 1930, Margate City adopted an ordinance entitled "An ordinance limiting and restricting to specified districts and regulating therein buildings and structures according to their construction and the nature and extent of their use in Margate City, in the county of Atlantic, and providing for the administration and enforcement of the provisions herein contained and fixing penalties for the violation thereof," the pertinent parts of which ordinance are as follows:

Section 1 "(d) lot line. A lot line is any boundary line of a lot."

"(i) Side yards. *A side yard is an open unoccupied space within the lot between a side lot line and the parts of the main building erected thereon and nearest thereto. Such side yard shall extend through from the front lot line to the rear yard.*"

"(j) Street. A street is any road, avenue, street, lane, or other way set aside for common street purposes or used for access to more than one lot. For the purposes of this ordinance in determining lot frontage or yards, the boardwalk, the waters of the Atlantic ocean and Beach Thoroughfare bordering the city, and of Orient and Sunset canals shall be deemed the equivalent of a street."

Section 4 "(b) No lot hereafter may be used and no building or part thereof hereafter may be erected, constructed, reconstructed, moved, extended, converted, altered, maintained or used except in conformity with the provisions of this ordinance."

Section 14 "1. *Within any dwelling zone there must be two side yards, the total width of which shall 'be not less than eleven* (11) *feet, and neither one shall be less than three* (3) *feet where the lot frontage is more than thirty* (30) *feet. Where the lot frontage is thirty feet or less there shall be two side yards, neither of which shall be less than three* (3) *feet.*"

Section 16 "In their interpretation and application the provisions of this ordinance shall be held to be the minimum requirements adopted for the promotion of the public health, morals and general welfare; for lessening the congestion in the streets; for securing safety from fire, panic and other dangers; for the provision of adequate light and air; for preventing overcrowding of lands or buildings; for the avoidance of undue concentration of population and for facilitating adequate provision of transportation, water, sewerage, schools, parks and other public improvements."

After the passage of this ordinance, the prosecutor reconstructed that part of his dwelling on lot 20, over water, in such a way that the main side wall of his building was moved over towards the side line of his lot, so that after said reconstruction, the main side wall of his dwelling was within twelve inches of the side lot line, being the division line between lot 20 and lot 19.

It seems to be conceded by the prosecutor that he is guilty of a violation of the terms of the ordinance, unless the ordinance was not intended to apply to that portion of the lot under water and unless the ordinance is invalid in so far as it attempts to regulate structures on that part of the lot covered by water, and unless it was unreasonable.

We think that the provisions of the ordinance referred to do apply to land under water, and the word "land" as used therein has the same meaning as defined by Chancellor Walker in the case of *Philadelphia Trust, Safe Deposit and Insurance Co.* v. *The Mayor and Council of the Borough of Merchantville,* 74 N. J. Eq. 330, wherein the Chancellor (at p. 332), defines the word "land" as follows: "Land, as I understand it, includes water, and this understanding seems to be supported by abundant authority. The word 'land' when used in a deed, includes not only the naked earth, but everything within it, and the buildings, trees, fixtures, fences, stones, minerals, water and herbage upon it. 18 *Am. & Eng. Encycl. L.* (2d ed.) 141. The word 'land' is comprehensive in its import, and includes many things besides the earth we tread on, as water, grass, buildings, fences, trees and the like,

for all these may be conveyed by the general designation of land. 5 *Words and Phrases, tit. 'Land,'* 3976," and (at *pp.* 333, 334), as follows: "In *Woodcliff* v. *New Jersey, &c., Railroad Co.,* 72 *N. J. L.* 137, land lying between high and low-water marks, acquired by a grant of riparian land, was held to be subject to condemnation under the state's power of eminent domain. The property taken was described as land, and it was partly upland and partly land under the tidewaters of the Hudson river. The Supreme Court said (at *p.* 139) that it seems impossible, upon principle, to say that such lands [under water] may not be condemned by corporations having the state's right of eminent domain. In *Rand. Em. Dom.* 77, it is said that the subjection of land, using the word in its common meaning, to the right of eminent domain is so evident that the citation of supporting cases is unnecessary. But among the wider uses of the word in law is that it describes earth and water in every natural condition, and all things artificially annexed to them. Hence, where there is an authorization, express or implied, to condemn land, the ex-proprietor may take under water a coal bed, land with buildings upon it, and in fine all improvements, interests and appurtenances included within the term real estate."

But the prosecutor argues that so interpreted the ordinance is invalid, because the prosecutor has the state's title. We think not.

At the time this ordinance was passed, the title to the lot in question was in the prosecutor and not in the State of New Jersey. The lot is within the boundaries of Margate City as fixed by chapter 100 of the laws of 1926. The location, dimensions and boundaries of this lot appear in the official records, and appear in the zoning map. As such, it was subject to regulation under the zoning ordinance for purposes of public safety the same as land purchased by one individual from another.

We think that the violation complained of by the city, of which the prosecutor has been found guilty, was a reasonable regulation.

Prosecutor's structure is a frame structure, a private dwelling, and it is within the police power of the city, and a reasonable exercise of that police power, to require that the main wall of such structure shall be not closer to the side line of his lot than three feet. Such a regulation provides a protection against spread of fire, and suitable means for access to fight fire.

The writ will be dismissed, with costs.