E. N. CULLEY *v.* CHARLES B. HOLLIS ET AL.

[No. 66, October Term, 1941.]

*Decided March 3, 1942.*

The cause was argued before BOND, C. J., SLOAN, JOHNSON, DELAPLAINE, FFRSYTHE, and MARBURY, JJ.

*Preston P. Heck* and *Eugene P. Childs* for the appellant.

*Hilary W. Gans,* with whom were *Brown & Brune, James B. Diggs* and *S. Scott Beck, Jr.,* on the brief, for the appellees.

SLOAN, J., delivered the opinion of the Court.

The appellant, E. N. Culley, was the holder of a ten-acre oyster bed located on Swan Creek, in Kent County, which he held under a lease from the Conservation Department of this State to George F. Satterfield, dated January 2, 1926. The appellee, Dr. Charles B. Hollis, is the owner of a parcel of land, triangular in shape, the longest side bordering on Swan Creek about 360 feet. Dr. Hollis had let a contract to his co-defendant, Irving L. Crouch, to build a pier extending 220 feet into Swan Creek, which was practically finished before the bill was filed. The water frontage of Dr. Hollis' lot was not a straight line, and the pier was projected about 100 feet from the northerly end of the property. The plaintiff does not complain of the location of the pier, so far as his shore property is concerned, but because it is projected into his oyster bed, the lease on which was assigned to him by George F. Satterfield.

It is conceded that Swan Creek is a navigable stream, the title to which is in the State. There is no contention that the jurisdiction of the War Department of the United States does not also extend over the stream, and that the consent of that department was necessary before the pier could be built. Dr. Hollis did have the consent of the War Department, but it has been held that such permit does not pretend to give any property rights to the permitee, nor authorize any injury to private property, nor obviate the necessity of the consent of the State, but merely expresses the assent of the federal government so far as the public rights of navigation may be affected. *Cummings v. Chicago,* 188 U. S. 410, 23 S. Ct. 472, 47 L. Ed. 525.

Dr. Hollis' claim to the right to erect a pier from his property out into the creek is derived from Code, 1939, Art. 54, Sec. 47. Mr. Culley's claim is by virtue of an oyster planting lease granted by the Conservation Department of the State, made under the provisions of the Act of 1906, Ch. 711, Code, 1939, Art. 72, Sec. 93 et seq. And the question here is the priority or superiority of one over the other. The ten-acre oyster lease of Culley extends over the entire water front of Hollis, so that if it gives him the superior right in the waters of Swan Creek, Hollis will be denied the right attached to his property by Section 47 of Article 54 of the Code, 1939, Act of 1862, Ch. 129, Sec. 38.

The statute defining the riparian rights of water front owners on navigable waters, Art. 54, Secs. 47 and 48 of the Code, 1939, Act of 1862, Ch. 129, Sec. 38, is:

"47. The proprietor of land bounding on any of the navigable waters of this State shall be entitled to the exclusive right of making improvements into the waters in front of his said land; such improvements and other accretions as above provided for shall pass to the successive owners of the land to which they are attached, as incident to their respective estates."

"48. No patent hereafter issued out of the land office shall impair or affect the rights of riparian proprietors, as explained and declared in the two preceding sections; and no patent shall hereafter issue for land covered by navigable waters." *Phipps v. State,* 22 Md. 380, 388, 85 *Am. Dec.* 654.

In *Garitee v. Baltimore,* 53 Md. 422, 433, it is declared that the "rights thus, secured, are valuable; they are property, according to repeated decision; and of which the owner cannot be deprived without his consent, or by other competent legal means. *Dungan v. Baltimore,* 5 G. & J. (357), 367; *Casey's Lessee v. Inloes,* 1 Gill (430), 501 (39 *Am. Dec.* 658) ; *Baltimore & Ohio R. R. Co. v. Chase,* 43 Md. 23; *Buccleugh v. Met. Board of Works,* 5 H. L. 418. And whenever those rights are invaded, or their enjoyment obstructed, the owner is entitled to

his remedy for redress, as in other cases of the violation of the rights of property."

In the case of *Hess v. Muir*, 65 Md. 586, 598, 5 A. 540, 542, 6 A. 673, this court, defining the improvements which, under Section 38 (now 47), a proprietor of land bounding on navigable waters may make into the same, it is said they are "such structures as are subservient to the land, and which, used in connection with the land, enhance its value, or enlarge its commercial or agricultural facilities, or other utility, to an extent the land alone would be incapable of, and in this way 'improve' it. They are to be made 'into' the water—a term inconsistent with entire separation from the land. Wharves, piers and landings are examples of such improvements."

Every question involved in this case was decided and every right defined in the case of *Hodson v. Nelson*, 122 Md. 330, 89 A. 934, 935. The bill in that case was filed by the riparian owner, who had not theretofore exercised his right to make "improvements into the waters in front of his land." The defendant had erected some crab houses or shanties in a navigable stream in front of but not adjacent to the plaintiff's property. The plaintiff filed a bill for injunction to compel the removal of the crab houses on the theory that they trespassed on his riparian rights. This court there held that until the riparian owner does exercise his right to make improvements extending from his property, he cannot complain of the use by others of the waters in front of his property. As said in *Hess v. Muir*, 65 Md. 586, 598, 5 A. 540, 6 A. 673, quoted with approval in *Hodson v. Nelson, supra*: "When such improvements are made they become incident to the estate, as not inherently identical in nature with land, but from being joined to it, and contributing to its uses and value legally identified with it, as a fixture or a right of way, or other appurtenance that passes with land."

The plaintiff's (appellant) contention is that under his oyster lease from the State, he has a property right which cannot be invaded or taken except by due process of law.

The defendant, Dr. Hollis, cannot avail himself of the right of emiment domain, so that whatever rights he has are derived from the Code, 1939, Art. 54, Sec. 47. "Until * * * 'improvements' are made to the land in the sense we have described, the mere right to construct them, although still subsisting, is not incompatible with licensing of the soil covered by water for uses not subversive of such right, or irreconcilable therewith, and which must yield to the paramount right of making improvements when actually exercised." *Hess v. Muir,* 65 Md. 586, 599, 5 A. 540, 542, 6 A. 673; *Hodson v. Nelson,* 122 Md. 330, 339, 340, 89 A. 934. And in *Western Maryland Tidewater R. R. Co. v. Baltimore,* 106 Md. 561, 567, 68 A. 6, 9, it is said: "It should not be forgotten that, although the riparian owner has the right to reclaim the land and to make improvements into the water in front of his original land, yet until he does so the title to the land under the water is in the State," and certainly the plaintiff, as lessee of the State, cannot deny the defendant the exercise of the right to build his pier whenever he chose so to do. When the plaintiff acquired his lease from the State, he did so with notice of the statute (Art. 54, Sec. 47), that owners of property abutting on the waters in which his lease was located had a right to make improvements from their land into the waters to the extent of such improvements.

The plaintiff offered evidence, which was disputed by evidence of the defendants, that the end of the pier projected to a point opposite the easterly end of his property, though it does not interfere with any improvements which he has made. The only complaint in the bill is that the defendants have seriously injured the oysters on the plaintiff's lease by the driving of piles and the building of the pier. That is the only question submitted, and we think that the chancellor was right in denying an injunction and dismissing the bill.

*Decree affirmed, with costs.*