THE YOUNGSTOWN CARTAGE COMPANY *v.*
NORTH POINT PENINSULA COMMUNITY
CO-ORDINATING COUNCIL ET AL.

[No. 472, September Term, 1974.]

*Decided February 19, 1975.*

The cause was argued before MOYLAN, POWERS, GILBERT and MASON, JJ.

*Irvin N. Caplan*, with whom were *Robert J. Romadka* and *Trent L. Seawell* on the brief, for appellant.

*Norman R. Stone, Jr.*, and *R. Bruce Alderman*, with whom was *Bernard F. Murphy* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

The State Highway Administration acquired,[1] as part of its "Baltimore Outer Tunnel" road program, title to a two acre tract of land known as 6201 North Point Boulevard. As a direct result of the State's acquisition of the property, in October 1972, the land, according to the Baltimore County Zoning map, was designated as "unzoned". Prior to the time that State purchased the land the southernmost portion of the tract was owned by Bethlehem Steel Corporation, and the northernmost portion was possessed by Shell Oil Company. The Bethlehem portion, zoned B.R. (Business Roadside) with a special exception for a truck terminal, was leased to the appellant, The Youngstown Cartage Company.

---

* Note: *Certiorari* granted, Court of Appeals of Maryland, May 23, 1975.

1. Md. Ann. Code art. 89B, § 7 (b) provides:

"The Administration may acquire for the State of Maryland by agreement, gift, grant, purchase or condemnation proceedings as prescribed by the provisions of Title 12 of the Real Property Article of the Code, any private property, rights or easements, for public purpose, that may be, in its judgment desirable or necessary to perform the duties imposed by this article, provided the authority and function vested in the State Roads Commission by Article III, § 40B of the Maryland Constitution shall be performed by said Commission."

The Shell part of the tract was also zoned B.R. with a special exception for an automotive service station.

Apparently because the State had no immediate use for the property,[2] it rented the entire tract to the appellant for $300.00 per month.

A complaint was filed with the Baltimore County Zoning Office concerning the appellant's operation of the trucking terminal on the entire tract.[3] The Deputy Zoning Commissioner held that:

> "Prima facie consideration of the facts presented in this case would permit the State to utilize their property (unzoned public land) for any use considered to be in the best interest of the public at large. However, since the State is not using the property for public land use and is in fact leasing said property to private enterprise . . . said use should be conducted in a manner that complies with the Baltimore County Zoning Regulations."

The Deputy Commissioner then ordered that the appellant prepare and present "an overall functional site plan" to the Office of Planning and Zoning. North Point Peninsula Community Co-ordinating Council, et al. appealed to the County Board of Appeals.

When the matter was called for hearing before the Board, the State Highway Administration appeared through its attorney who advised the Board that, in the State's view, the " . . . Board has no jurisdiction in this matter, in that the property is owned by the State. . . ." Taking a contrary view of the jurisdictional question, the Board went forward with the hearing and decided the case adversely to the appellant.

Appellant entered an appeal from the Board's decision to the Circuit Court for Baltimore County. Judge H. Kemp

---

2. Md. Ann. Code art. 89B, § 22A (a) authorizes the Department of Transportation, of which the State Highway Administration is a part, "to purchase real property that it deems will be necessary for future improvement of the State transportation system."

3. The record is unclear on the State's plans for the land in question, but apparently the State will use most of the southernmost portion in connection with the "Outer Tunnel". There is a reference in the record to the State's intention to, at least, consider selling all of the unused land to the appellant.

MacDaniel affirmed the Board's action. Appellant, aggrieved by the decision of the hearing judge, has appealed to this Court.

Judge MacDaniel based his affirmance of the Board on Section 103.2 of the Baltimore County Zoning Regulations which provides:

"When any *public use ceases* or when title to unzoned land passes into private ownership, public land or buildings shall not be used for private purposes until they shall have been zoned in conformance with these Regulations." (Emphasis supplied).

The judge said:

"There is no question that the property, although State owned, is being used for private enterprise via a landlord-tenant relationship. No public use is being made of this property, therefore, it must be zoned in accordance with the zoning regulations before private use may be made of it."

Appellant has consistently taken the position that because the property in question is owned by the State Highway Administration the County is devoid of authority to regulate the property. Appellant argues:

"The powers and authority of the County Board of Appeals stem from the express powers granted under Article 25A of the Annotated Code of Maryland. There is no grant of power in this Article permitting any County agency or regulatory body to control or regulate a State agency such as the State Highway Administration. To allow any County Board ... to regulate or control a State agency would be the equivalent of making the governmental body that grants the power to act, inferior to the governmental body receiving the power to act."

Appellant's argument, while having a certain appeal, does not really meet the issue because the county is not attempting to regulate or control the State's use of the land,

but rather the use by a private tenant of the State. The county seeks to enforce its own zoning code as that code applies to any privately operated business.

Assuming *arguendo* that the county does not have authority to zone land owned and used by the State, as appellant suggests, and which we do not here decide,[4] the land in the case now before us is not put to the *"public use"*.

The term "public use" has been defined in many ways.[5] In Maryland the Court of Appeals appears to have taken different views of "public use". The first view appears in *Arnsperger v. Crawford*, 101 Md. 247, 61 A. 413 (1905) wherein the Court adopted a "strict" construction, holding that "public use" means use or enjoyment by the public, and that the term is not synonymous with public benefit, public utility or public advantage. *Arnsperger's* holding was repeated in *Riden v. Phila. B&W RR Co.*, 182 Md. 336, 35 A. 99 (1944) wherein the Court held at 344 that:

" . . . Where, however, a branch line, although actually intended for a single mine, factory or other establishment, will be an integral part of the railroad system, and the public will have the right to use it under the provisions of the charter of the

---

**4.** The question of a county's right to zone state-owned and used land does not appear to have been decided thus far in Maryland, *but see* Mayor, etc. of the City of Annapolis v. Anne Arundel County, 271 Md. 265, 290, n. 4, 316 A. 2d 807 (1974); Mayor and City Council of Baltimore v. Linthicum, 170 Md. 245, 250, 183 A. 531, 61 A.L.R.2d 972 (1936); Note, *Governmental Immunity from Local Zoning Ordinances*, 84 Harv. L. Rev. 869 (1970); Comment, *The Inapplicability of Municipal Zoning Ordinances to Governmental Land Uses*, 19 Syr. L. Rev. 698 (1968); Comment, *The Applicability of Zoning Ordinances to Governmental Land Use*, 39 Tex. L. Rev. 316 (1961); Annot., *"Application of zoning regulations to governmental projects or activities,"* 61 A.L.R. 2d 970 (1958); F. Michelman & T. Sandalow, *Government in Urban Areas* 767 (1970).

**5.** 29A C.J.S. *Eminent Domain* § 31 (1965) states, "No hard-and-fast rule can be laid down for the purpose of determining whether specific uses or purposes are public or private. . . . So, the courts are not in agreement as to the tests to be applied." (Footnote omitted). Cases adopting the "liberal" construction that public use is synonymous with public benefit, public utility or public advantage include: Brammer v. Housing Authority of Birmingham Dist., 239 Ala. 280, 195 So. 256 (1940); Gohld Realty Co. v. City of Hartford, 141 Conn. 135, 104 A. 2d 365 (1954); Town of Perry v. Thomas, 82 Utah 159, 22 P. 2d 343 (1933). *Contra*, United States Tennessee Valley Authority v. Welch, 150 F. 2d 613 (4th Cir. 1945), *reversed on other grounds* 327 U. S. 546, 66 S. Ct. 715, 90 L. Ed. 843 (1946); Grubstein v. Urban Renewal Agency of City of Tampa, 115 So. 2d 745 (1959); City of Richmond v. Carneal, 129 Va. 388, 106 S. E. 403, 14 A.L.R. 1341 (1921); Smith v. Cameron, 106 Or. 1, 210 P. 716, 27 A.L.R. 510 (1922).

railroad corporation and the laws of the State, it will be considered for public use, even though the owners of the establishment may contribute toward the cost of construction."

The Court went on to note at 345:

" . . . [H]orse racing has been one of the most popular sports in Maryland since Colonial days and has long been fostered by this State. Since the branch line to Bowie Race Track will presumably be open to the general public, we hold that it is for public use. . . ."

Thereafter, Maryland's definition of "public use" became hazy. In *Herzinger v. City of Baltimore*, 203 Md. 49, 98 A. 2d 87 (1953) the Court enunciated another test. *Herzinger* was an attack on the constitutionality of a Baltimore City ordinance designed to empower the City to acquire property for "public redevelopment purposes." In that case the Court, at 60, expressed the view that a taking may be for a "public benefit". Later, in *Master Royalties v. Balto. City*, 235 Md. 74, 200 A. 2d 652 (1964), the Court recognized the apparent anomaly that exists in Maryland. The Court then declared that Article XI - B (City of Baltimore-Land Development and Redevelopment) of the Maryland Constitution "embodies a broader concept of public use than that contained in article III, section 40 [Eminent Domain] as interpreted by *Riden*." Ghingher & Ghingher, *A Contemporary Appraisal of Condemnation in Maryland*, 30 Md. L. Rev. 301, 303 (1970). The authors continue:

" . . . Thus, Maryland has two distinct concepts of public use, both of which are of constitutional dimension: a taking under article III, section 40 is constitutional only if the property is to be used 'by the public', while the purpose of the takings authorized by article XI-B is constitutional if it is for the 'public benefit'."

The public benefit test seems to be limited to Land Development and Redevelopment projects such as slum clearance, and it is not applicable to the instant case.

The public use test of *Arnsperger* and *Riden*, however,

applies. The North Point Road property owned by the State and rented to the appellant does not fall within the ambit of the term public use as that term has been defined by *Arnsperger* and *Riden*. The public has no right to enter upon or make use of the subject property so long as appellant remains a lawful tenant thereof. The State Highway Administration is but the landlord of the appellant until such time. as the State sees fit to terminate the lease agreement, terminate the lease agreement and rent to another, use the property for its own purposes, or divest itself of title.

We are cognizant of cases which hold that when a sovereign acquires title to property and leases it to a tenant, the sovereign's immunity from local zoning laws is transferred to the tenants. *See, e.g., Aviation Services Inc. v. Bd. of Adjustment,* 20 N. J. 275, 119 A. 2d 761 (1956); *Hill v. Collingswood,* 9 N. J. 369, 88 A. 2d 506 (1952). We decline to follow those cases. In our view, the New Jersey holdings permit the State to acquire property under the guise of sovereign immunity and lease or rent that property to private individuals or concerns for a purpose that, without the interposition of the State, would be not only violative of county or municipal zoning ordinances or regulations, but detrimental to the public health, safety and general welfare.

In *Mayor and City Council of Baltimore v. Linthicum, supra* n. 4, the Court considered a contention that a property owner's proposed use denial was unconstitutional because of its claimed interference with the United States mail. The postal authorities were to be the tenants of Linthicum and planned, under a ten year lease, to occupy a proposed substation post office. The Court, in dicta, stated that the property was not owned by the federal government, and that the government had "only such property rights as may be derived from the owner." The Court did not consider whether, if existent, governmental immunity from local zoning ordinances and regulations was properly transferable to a private person or concern.

We conclude that when the State acquires land and then leases or rents that land to a private person or concern for a

private use, the land is subject to local zoning ordinances or regulations so long as it is so leased or rented.

*Judgment affirmed.*
*Costs to be paid by appellant.*