HARBOR ISLAND MARINA, INC. *v.* BOARD OF
COUNTY COMMISSIONERS OF CALVERT
COUNTY, MARYLAND

[No. 10, September Term, 1979.]

*Decided November 7, 1979.*

304

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*Thomas Axley,* with whom were *Axley & Crum, P.A.* on the brief, for appellant.

*Robert L. Gray,* with whom were *Allen S. Handen* and *Handen & Singerman* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

Concerning as it does, the use of Maryland's vast body of navigable water, the land which it covers, and the many miles of shoreline connected with it,[1] the present appeal presents a question of great importance which has not yet been addressed by this Court — whether the authority to enact zoning ordinances granted to Maryland's political subdivisions by the General Assembly in section 4.01 of Article 66B of the Maryland Code (1957, 1978 Repl. Vol.) encompasses the power to regulate in that manner the use of these valuable natural resources.[2] However, we may only consider this issue if we first conclude that there exists no procedural impediment to our doing so. Although these legal inquiries involve considerable analysis, the factual background of the case can be stated with facility.

The present controversy emanates from an amendment on November 30, 1976, by the Board of County Commissioners of Calvert County, to Article 15 and Zoning Map 21A of that

---

1. The navigable waters of Maryland comprise 2,429 square miles or 20% of the State's total surface area, while the shoreline, which exists in sixteen of our twenty-three counties and Baltimore City, runs for 3,190 miles. Md. Dep't of Gen'l Services, *Maryland Manual 1979-80* 1 (1979).

2. The zoning authority of charter counties is found in Md. Code (1957, 1973 Repl. Vol., 1979 Cum. Supp.), Art. 25A, § 5 (X); *cf.* Md. Code (1957, 1978 Repl. Vol.), Art. 66B, § 7.03 (Article 66B does not apply to chartered counties); while the zoning authority for Baltimore City is located in Md. Code (1957, 1978 Repl. Vol.), Art. 66B, §§ 2.01-.12, and for municipal corporations in Prince George's and Montgomery Counties in Md. Code (1957, 1978 Repl. Vol.), Art. 66D, §§ 8-101(b),-112. Therefore, when we use the phrase "political subdivisions" in this opinion, we are referring to the non-chartered counties and all municipal corporations, other than those just referred to. *See* City of Annapolis v. Kramer, 235 Md. 231, 234, 201 A.2d 333, 335 (1964) (Article 66B must be complied with even though Md. Code (1957, 1973 Repl. Vol.), Art. 23A, § 2(30), pertaining to municipalities, also provides for zoning).

county's zoning ordinances. As expressed in its opening section, the purpose of this enactment is "[t]o provide . . . for the orderly development of the waterfront areas within the County beginning with Map No. 21 entitled, the 'Solomon's Harbor Lines.' " Calvert County, Md., Zoning Ordinance, Art. 15, § 15.01 (1976). It enumerates those marine facilities permitted within the "useable waterway area",[3] such as piers, mooring piles and floats, and establishes the location of harbor, shore and lateral lines so that, as the parties agree, one-fourth of the width of the channel would be available to riparian owners for development. *Id.* at §§ 15.04, .09-.11. The new ordinance also prohibits certain structures in the useable waterway area, and provides set-back limitations, construction details, and fire, parking and sanitary strictures. *Id.* at §§ 15.06, .11, .13-.16. Additionally, the enactment states that its requirements shall supplement "existing Federal and State regulations governing the same matters and . . . [that] [t]he more restrictive regulation shall take precedence." *Id.* at § 15.02.

The petitioner, Harbor Island Marina, Inc., is a riparian landowner within the Solomon's Harbor map area whose property is partially developed for water associated commercial use. Initially, the riparian proprietor filed an application with the county commissioners for a zoning revision, claiming that the establishment of the harbor lines at one-quarter of the available width of the channel [4] was an arbitrary act that did not promote the public health, morals, safety and welfare of the county. Upon denial of its revision application, Harbor Island sought judicial redress by way of an appeal to the Circuit Court for Calvert County (Bowen, J.). Md. Code (1957, 1978 Repl. Vol.), Art. 66B, § 4.08. There, the petitioner contended that the power to regulate navigable waters and the land beneath them was not delegated to the county by either Article 25 of the Maryland Code (1957, 1973

---

**3.** The "useable waterway area" is "the area enclosed by the harbor line, shoreline and lateral lines." Calvert County, Md., Zoning Ordinance, Art. 15, § 15.09 (1976).

**4.** The county engineer had recommended that riparian owners be permitted the use of one-third of the channel. This reduction, by one-twelfth, of the useable waterway area appears to have precipitated this dispute.

Repl. Vol., 1979 Cum. Supp.) (establishing the general powers of non-chartered counties) or Article 66B of the Code, and that, therefore, the enactment of the zoning amendments constituted a misuse and abuse of power. With that appeal still pending, Harbor Island instituted this Declaratory Judgment Act proceeding, Md. Code (1974), Courts Art., §§ 3-401 to 415, in the circuit court, requesting a determination of the county's power to zone and regulate tidal waters and wetlands within its borders.

On January 20, 1978, Judge Perry G. Bowen, Jr. entered an order declaring that "Article 66B of the Annotated Code of Maryland gives the County Commissioners power and authority to enact Article 15 of the Calvert County Zoning Ordinance and Zoning Map 21." Harbor Island sought review of this order in the Court of Special Appeals and, at the same time, dismissed its appeal from the administrative agency's denial of its application for a zoning revision.[5] The intermediate appellate court, without addressing the substantive issue raised, reversed the trial court's decision because it determined that the circuit court lacked authorization to entertain the present declaratory judgment action. This Court granted certiorari, and since, for the reasons next stated, we conclude that a Declaratory Judgment Act proceeding was available here, we will address the merits of the issue sought to be litigated by the institution of this action.

I

Raising the issue *ex mero motu,* the Court of Special Appeals, after observing in an unreported opinion that there existed a special statutory remedy under section 4.08(a) of Article 66B through which the questions presented for decision in this suit could have been adjudicated, concluded that section 3-409(b) of the Declaratory Judgment Act

---

5. Neither party argues that the dismissal creates any impediment to the present appeal and, therefore, we do not consider any issue which might arise from this action.

precluded resort to this type of action to resolve the underlying dispute.[6] We disagree.

In explaining our reasons, we initially recognize that when an administrative remedy is statutorily directed, the nature of the relief specified by the enactment must ordinarily be utilized as a prerequisite to court action. *Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Arena,* 282 Md. 588, 594-95, 386 A.2d 1216, 1222 (1978); *State Dep't of A. & Tax. v. Clark,* 281 Md. 385, 403, 380 A.2d 28, 39 (1977). However, as we pointed out in *Clark,* " '[t]here are few absolutes in the law, and the rule that an administrative remedy must be exhausted before recourse is had to the courts is not one of them.' " *Id.* (quoting from *Poe v. Baltimore City,* 241 Md. 303, 308, 216 A.2d 707, 709 (1966)). The law pertaining to this issue was further explained in *Clark:*

> [W]here there is a full opportunity . . . to protest . . . to administrative agencies and adequate provisions for judicial review of the agencies' action, a court shall not take jurisdiction unless the administrative remedies have been exhausted. This is so even though a constitutional issue has been raised, when that issue goes to the application of a general statute to a particular situation, *as contrasted with a constitutional attack upon the validity of a general enactment as a whole, which is reviewable in any event.* [*Id.* at 404 [39] (emphasis supplied).]

Although there is language in *Soley v. St. Comm'n on Human Rel.,* 277 Md. 521, 527-28, 356 A.2d 254, 258 (1976) that arguably could be said to indicate otherwise, we here explain that the "constitutional exception" to which we have just alluded permits a judicial determination without administrative exhaustion when there is a direct attack upon the power or authority (including whether it was validly enacted) of the legislative body to adopt the legislation from which relief is sought.

---

**6.** Section 3-409(b) reads: *"Special form of remedy provided by statute —* If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

In the present declaratory judgment action, the basic attack being launched by the appellant is upon the power or authority *vel non* of the Board of County Commissioners of Calvert County to adopt the ordinance of November 30, 1976, amending in the manner it did Article 15 and Zoning Map 21 of the Calvert County Zoning Ordinances. Since this clearly falls within the "constitutional exception," the power to enact is an issue that may be litigated in this Declaratory Judgment Act suit. *See Poe v. Baltimore City,* 241 Md. 303, 308, 216 A.2d 707, 709 (1964).

## II

We now turn to the underlying substantive issue involved in this dispute — whether Article 66B of the Code authorizes the county to regulate, through zoning, the navigable waters located within its boundaries.[7] In order to answer this question it is necessary for us to examine the regulatory authority of the Calvert County Commissioners, the legal and historical status of the navigable waters and the lands beneath them, and the nature of the property rights accruing to riparian landowners in this State.

We begin by recognizing that "a county may exercise [only] 'the authority with which [it has] been expressly, or as a reasonable implication, invested by law.'" *Blumenthal v. Clerk of Cir. Ct.,* 278 Md. 398, 410, 365 A.2d 279, 286 (1976) (quoting from *Montgomery County v. Met. District,* 202 Md. 293, 304, 96 A.2d 353, 357 (1953)); *accord,* Md. Const., Art. VII, § 1; Art. XI-A, § 3; *Frederick County v. Page,* 163 Md. 619, 631, 164 A. 182, 188 (1933). As with all legislative grants, the zoning authority is circumscribed by any limitations established by the General Assembly in the enactment or as otherwise may be validly imposed by law. *See Cassel v. City of Baltimore,* 195 Md. 348, 353, 73 A.2d 486, 488 (1950). Therefore, whether Calvert County may zone the area covered by the navigable waters found within its borders

---

7. In part II of the opinion, we only address the question of Calvert County's *authority to enact,* as distinguished from the reasonableness of, zoning regulations relating to riparian landowner's rights to wharf out, since this is the sole basis of appellant's attack in this case.

depends on the language of any statute which delegates or otherwise affects the county's authority to zone.

The basic zoning power, which has been legislatively granted to the political subdivisions of this State, is found in section 4.01 of Article 66B of the Code which provides:

§ 4.01. Grant of powers ...

(a) For the purpose of promoting health, safety, morals, or the general welfare of the community the legislative body of counties and municipal corporations are hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, off-street parking, the size of yards, courts and other open spaces, the density of population and the location and use of buildings, signs, structures and land for trade, industry, residence or other purposes.

(b) The local legislative body of a county or municipal corporation, upon the zoning or rezoning of any land or lands pursuant to the provisions of this article, may impose such additional restrictions, conditions, or limitations as may be deemed appropriate to preserve, improve, or protect the general character and design of the lands and improvements, and may, upon the zoning or rezoning of any land or lands, retain or reserve the power and authority to approve or disapprove the design of buildings, construction, landscaping, or other improvements, alterations, and changes made or to be made on the subject land or lands to assure conformity with the intent and purpose of this article and of the jurisdiction's zoning ordinance. The powers provided in subsection (b) of this section shall be applicable only if the local legislative body adopts an ordinance which shall include enforcement procedures and requirements for adequate notice of public hearings and conditions sought to be imposed. [Md. Code (1957, 1978 Repl. Vol.), Art. 66B, § 4.01(a) — 4.01(b).]

This language does not, by specific delineation, empower Calvert County to zone the navigable waters and their bottoms found within its borders, but neither does it specifically prohibit such regulation of these areas. Since the statute is silent on this issue, we must resort to the rules of statutory construction which we have developed over the years to determine the import of the legislative enactment.

The polestar of statutory interpretation is to ascertain and carry out the real intent of the legislature when it enacts a statute. *E.g., Comptroller of Treasury v. John C. Louis Co.,* 285 Md. 527, 538, 404 A.2d 1045, 1052 (1979); *Mauzy v. Hornbeck,* 285 Md. 84, 92, 400 A.2d 1091, 1095-96 (1979); *Frank v. Baltimore County,* 284 Md. 655, 658, 399 A.2d 250, 253 (1979). This intent must first be sought from the words utilized in the enactment, with the terminology chosen being given its ordinary and popularly understood meaning. *E.g., Mauzy v. Hornbeck, supra; Frank v. Baltimore County, supra; Police Comm'r v. Dowling,* 281 Md. 412, 418, 379 A.2d 1007, 1010 (1977). However, if because of uncertainty interpretation becomes necessary, courts must consider not only the everyday meaning of the enactment's words, but also the effect of the proposed construction in light of the subject matter and purposes sought to be accomplished. *See Comptroller of Treasury v. John C. Louis Co., supra,* 285 Md. at 538, 404 A.2d at 1053; *Curtis v. State,* 284 Md. 132, 142, 395 A.2d 464, 470 (1978); *Fairchild v. Maritime Air Serv.,* 274 Md. 181, 185-86, 333 A.2d 313, 316 (1975). If the statute is susceptible of more than one construction which is both reasonable and consistent with commonsense, then we should apply the construction which will carry out its object and purpose. *See, e.g., Comptroller v. Mandel Re-election Com.,* 280 Md. 575, 579-80, 374 A.2d 1130, 1132 (1977); *Fairchild v. Maritime Air Serv., supra,* 274 Md. at 186, 333 A.2d at 316.

Returning to the language of the enabling act we now ponder, it appears that the sole reference concerning the territorial reach of the county's power may be found in the language which grants the authority "to regulate and restrict the . . . use of buildings, signs, structures *and land"* as well as the power "upon the zoning . . . of *any land or lands . . .*

[to] impose such additional restrictions . . . as may be deemed appropriate to preserve . . . the general character *of the lands* and improvements being zoned . . . or of the *surrounding or adjacent lands* and improvements." Md. Code (1957, 1978 Repl. Vol.), Art. 66B, § 4.01(a) — 4.01(b) (emphasis added). As can be seen from this quotation, the key words in the statute bearing on the issue before us are "land" and "lands," when used alone or in combination. Whether the ability to zone "land" includes the authority to zone that which is submerged under water depends on a reasonable construction of these words in accordance with the rules just mentioned.

The petitioner contends that when the General Assembly used the word "land" in the statute, it intended to limit the county's zoning authority to only the dry, solid earth found within its borders and not land lying beneath its waters. While such a construction is in accord with one of the commonly accepted definitions of the word, *Webster's Third New International Dictionary* 1268 (2d. unabr. ed. 1961) ("the solid part of the surface of the earth in contrast to the water of oceans and seas"), it is not the only one. *Id.* (e.g., "the surface of the earth and all its natural resources;" "any ground, soil, or earth whatsoever regarded as the subject of ownership . . . and everything annexed to it whether by nature (as trees, water) or by man . . ."). In view of the underlying remedial purpose of the zoning act, we believe that the interpretation urged by the petitioner is too limited in nature. The purpose of the zoning law is to promote the health, safety, and general welfare of the public, Md. Code (1957, 1978 Repl. Vol.), Art. 66B, § 4.03, and the Act vests in the counties the full measure of power which the State could exercise in pursuit of this objective. *See Carney v. City of Baltimore,* 201 Md. 130, 135, 93 A.2d 74, 76 (1952). "The very essence of zoning is territorial division according to the character of the land and . . . their peculiar suitability for uses, and uniformity of use within the zone." *Heath v. M. & C. C. of Baltimore,* 187 Md. 296, 305, 49 A.2d 799, 804 (1946). Thus, to limit the power to zone to only the dry land within a county places an unwarranted restriction on the exercise of the police power, which in no

way was indicated by the Legislature, and hampers the purpose for which the statute was passed.[8]

Moreover, the word "land" has been the subject of numerous judicial constructions. See 24 Words and Phrases *Land* 277-314 (1966 & 1979 Cum. Supp.). The High Court of Chancery of Maryland, for instance, held, as early as 1831, that " 'land,' in the legal signification, comprehends all ground, soil, or earth whatever; . . . *and it comprehends tide water rivers, lakes, and running streams, as so much land covered with water . . .*" *Coombs v. Jordan,* 3 Bland 284, 311 (Md. Ch. 1831) (emphasis added). The courts of our sister jurisdictions have reached similar constructions of this word. For example, the Supreme Court of Iowa, in focusing on the word "land" as used in the Act of Congress admitting that state to the Union, held that "lands are not the less land for being covered with water." *State v. Jones,* 143 Iowa 398, 122 N.W. 241, 243 (1909). And, in the case of *Wynn v. Margate City,* 9 N.J. Misc. 1324, 157 A. 565 (1931), the Supreme Court of New Jersey held that the word "land," as used in a zoning ordinance, included land under water. *Id.* at 566. Similarly, in our view, when the General Assembly delegated to Calvert County the authority to zone any "land" or "lands" within its boundaries, it intended that this power be applied to the four corners of the county, no matter whether wet or dry. *Cf. Slayton Gun Club v. Town of Shetek,* 286 Minn. 461, 176 N.W.2d 544, 546-47 (1970) (word "land" in statute establishing minimum holdings before a private road may be built includes submerged land); ALI, *A Model Land Development Code* § 1-201 (6) (Apr. 1974 Draft) ("land includes the earth, water and air, above, below or on the surface").

We point out, however, that this conclusion — that the enabling act permits Calvert County to zone all areas within

8. Whenever the General Assembly has intended that the word "land" be given a more restricted meaning, it has clearly so indicated. See, for example, Title 13 of the Real Property Article relating to land patents. Md. Code (1974, 1979 Cum. Supp.), Real Prop. Art., § 13-101(f)(3) (" 'land' does not include any area covered by navigable water unless it was included in a patent issued before March 3, 1862.").

Furthermore, there may be significance in the fact that the plural of the word "land" is defined by *The American Heritage Dictionary* (1969) as "[t]erritorial possessions." *Id.* at 735.

its borders — does not totally solve the dispute now before us, for we must recognize the historically distinct legal status relating to ownership which the land beneath the tidal waters has in this State and the consequences pertaining to zoning which flow from it. We have, on numerous occasions, traced the long and unique history of our State's tidal waters. *See, e.g., Bd. of Pub. Works v. Larmar Corp.,* 262 Md. 24, 35, 277 A.2d 427, 432 (1971); *Kerpelman v. Bd. of Public Works,* 261 Md. 436, 445, 276 A.2d 57, 61, *cert. denied,* 404 U.S. 858 (1971); *Sollers v. Sollers,* 77 Md. 148, 151-52, 26 A. 188, 188 (1893). One aspect of that history, which is established beyond all question, is that nearly all of the navigable waters, as well as the lands beneath them, are owned by the State for the benefit of all its citizens.[9] Md. Decl. of Rts., Art. 5; *Caine v. Cantrell,* 279 Md. 392, 396, 369 A.2d 56, 58 (1977); *Dep't of Natural Res. v. Ocean City,* 274 Md. 1, 5, 332 A.2d 630, 633 (1975); *Kerpelman v. Bd. of Public Works, supra.* As proprietor of this area, the State holds all powers of regulation and control over these "lands," subject to the paramount power of the United States to regulate navigation. *See Western Contracting Co. v. Titter,* 255 Md. 581, 587, 258 A.2d 600, 604 (1969); *Adams v. Carey,* 172 Md. 173, 181-82, 190 A. 815, 819 (1937).

The relevance of this history, demonstrating ownership in the State of the navigable waters and land beneath it, to the issue confronting us in this case, is made plain in light of our

---

**9.** Not all the land lying beneath the navigable waters is owned by the State because during the first couple of hundred years of our history both the Lord Proprietor and the State granted private individuals patents in fee to some of these lands. See, e.g., Linthicum v. Coan, 64 Md. 439, 2 A. 826 (1886). *Accord,* Kerpelman v. Bd. of Public Works, 261 Md. 436, 445, 276 A.2d 57, 61, *cert. denied,* 404 U.S. 858 (1971); Baltimore v. McKim, 3 Bland 453, 460-61 (Md. Ch. 1831); Browne v. Kennedy, 5 H. & J. 195, 203-07 (1821) (Buchanan, J.). This practice of alienation was halted in 1862 by the passage of chapter 129 of the laws of that year, which was formerly codified in Md. Code (1974), § 13-118 of the Real Property Article. This section was repealed by ch. 915 of the Acts of 1976 which restructured the land patents title of this article. The restriction we here discuss is now handled by way of definition. *See* Md. Code (1974, 1979 Cum. Supp.), Real Prop. Art., § 13-101(f)(3). For a discussion of the State's ownership of these tidal lands and its grant of them, by way of patent, to a few private individuals prior to the Act of 1862, see the opinion by Judge Smith for this Court in Van Ruymbeke v. Patapsco Ind. Park, 261 Md. 470, 474-80, 276 A.2d 61, 64-67 (1971).

recent decision in *City of Baltimore v. State,* 281 Md. 217, 378 A.2d 1326 (1977). There we held that any real property owned by the State is not subject to the zoning ordinances enacted by the local subdivisions because the General Assembly did not specifically name the State as a landholder who was to be bound when it enacted Article 66B of the Code. *Id.* at 223-24, [1329-30]. Since title to most, if not all, of the tidal lands is in the State, then, even if Article 66B on its face encompasses the right to zone all territory within a political subdivision's boundaries, our holding in *City of Baltimore* would appear to prohibit the application of the zoning laws to these State-owned lands. While we do not retreat from our holding in that case, we nonetheless find that the view expressed there is not dispositive of the present controversy, for we determine that another aspect of our property law — rights of riparian owners — must be examined in order to answer the issue confronting us here.

This doctrine recognizes that the owner of land adjacent to bodies of water in which the tide ebbs and flows possesses a bundle of rights in this water, and the land which it covers, by virtue of the proximity of his property to the water. *See Bd. of Pub. Works v. Larmar Corp., supra,* 262 Md. at 36-37, 277 A.2d at 432; *B. & O. R.R. Co. v. Chase,* 43 Md. 23, 34-35 (1875); 1 R. Clark, *Water & Water Rights* § 16.2, at 67 (1967); 2 H. Tiffany, *The Law of Real Property* § 665, at 714 (3d ed. 1939). In Maryland, under the common law as we inherited it in this State, *see* Md. Decl. of Rts., Art. 5, and prior to any statutory recognition of the existence of riparian rights, it was accepted that, where a tract of land was situated contiguous to navigable water, "any increase of soil formed by the gradual . . . recession of the waters, or any gain by the gradual . . . formation of what is called alluvion . . . shall belong to the proprietor of the adjacent or contiguous land." *B. & O. R.R. Co. v. Chase, supra,* 43 Md. at 34-35 (emphasis omitted). *Accord, Linthicum v. Coan,* 64 Md. 439, 450-52, 2 A. 826, 827-28 (1886); *Giraud v. Hughes,* 1 G. & J. 249, 264-65 (1829). The principal purpose underlying the recognition of this common law right was that it would preserve the riparian owner's ability to gain access to the major roadway of the day

— navigable water. *See, e.g., Steinem v. Romney,* 233 Md. 16, 23, 194 A.2d 774, 777 (1963).

Beginning in 1745, and throughout the ensuing years, there have sporadically been legislative enactments recognizing, expanding, and redefining the rights and privileges riparian owners were entitled to exercise in the tidal waters abutting their lands. *See* 1745 Md. Laws, ch. 69, § 10; 1796 Md. Laws, ch. 68; 1824 Md. Laws, ch. 33, § 14; 1835 Md. Laws, ch. 168; 1862 Md. Laws, ch. 129; 1970 Md. Laws, ch. 241; *Potomac Sand and Gravel v. Governor,* 266 Md. 358, 364, 293 A.2d 241, 244-45, *cert. denied,* 409 U.S. 1040 (1972); *Bd. of Pub. Works v. Larmar Corp., supra,* 262 Md. at 37-39, 277 A.2d at 431-33; *Day v. Day,* 22 Md. 530, 537 (1865). Of particular importance to this case was the inclusion as a riparian right of the privilege to make improvements into the water by the riparian owner from his property. Consequently, we now examine the development of this privilege, from its inception in the mid-18th century to the present day.

The first of these legislative grants may be found in the 1745 Act incorporating Baltimore Town, where the relevant portion provides that within the town:

> All Improvements, of what kind soever, either Wharfs, Houses, or other Buildings, that have or shall be made out of the Water, or where it usually flows, shall (as an Encouragement to such Improvers) be for ever deemed the Right, Title and Inheritance of such Improvers, their Heirs and Assigns for ever. [1745 Md. Laws, ch. 69, § 10.]

The apparent purpose of this provision was "to accommodate the growing pains of a burgeoning colony . . . [and] . . . the building of a bustling port on the eastern seaboard to support westward expansion of population and commerce." *Bd. of Pub. Works v. Larmar Corp., supra,* 262 Md. at 37, 277 A.2d at 432-33. *Accord, B. & O. R.R. Co. v. Chase, supra,* 43 Md. at 36. In order to accomplish this purpose, the Lord Proprietor agreed to relinquish all of his rights of ownership in the tidal lands covered by such improvements to those who constructed them. *See B. & O. R.R. Co. v. Chase, supra,* 43

Md. at 36; 50 Op. Md. Att'y Gen. 452, 464-65 (1965). A similar right was granted to the landowners of Port Deposit on the Susquehanna River by the Act of 1824, although not in language as sweeping as that used in the earlier enactment. *See Tome Institute v. Crothers,* 87 Md. 569, 40 A. 261 (1898).

In 1862, the Maryland General Assembly extended the benefits and protections of these earlier Acts to all of the citizens of this State when it adopted chapter 129 of the Laws of that year. This enactment provides:

> The proprietor of land bounding on any of the navigable waters of this State, is hereby declared to be entitled to the exclusive right of making improvements into the waters in front of his said land; such improvements . . . shall pass to successive owners of the land to which they are attached, as incident to their respective estates . . . . [1862 Md. Laws, ch. 129, *formerly codified as,* Md. Code (1957), Art. 54, § 46, *repealed by and incorporated in,* 1970 Md. Laws, ch. 241 (popularly referred to as Wetlands Act), *codified as,* Md. Code (1974), Natural Resources Art., § 9-201.]

Although the language utilized in section 46 is not facially as broad as that contained in the Act of 1745, we have consistently construed this provision as conferring substantially the same rights upon riparian owners as did the earlier statute. *See, e.g., City of Baltimore v. Canton Co.,* 186 Md. 618, 625-26, 47 A.2d 775, 778 (1946); *Hodson v. Nelson,* 122 Md. 330, 338-39, 89 A. 934, 937 (1914); *accord,* 50 Op. Md. Att'y Gen. 452, 464-65 (1965); Note, *Maryland's Wetlands: The Legal Quagmire,* 30 Md. L. Rev. 240, 249 (1970).

This Court has, in the past, had many occasions to consider the extent and nature of the right to wharf out granted by the 1862 enactment and its predecessors.[10] *See, e.g., Bd. of*

---

**10.** Describing the right to make improvements as "wharfing out" can be misleading, since the natural connotation of this phrase envisions a structure begun at the shore and extended out into the water. However, "in making improvements, the riparian proprietor is not compelled . . . to commence them at the shore, but may begin at the outer extremity of the projected improvement, and extend the same to the bank of the river . . . ." Goodsell v. Lawson, 42 Md. 348, 373 (1875).

*Pub. Works v. Larmar Corp., supra,* 262 Md. at 35-46, 277 A.2d at 434-37; *Feudale v. Sarles,* 190 Md. 244, 251-53, 58 A.2d 248, 251-52 (1948); *City of Baltimore v. Canton Co., supra,* 186 Md. at 622-27, 47 A.2d at 777-79; *Hodson v. Nelson, supra,* 122 Md. at 334-40, 89 A. at 936-38; *West. Md. T. R. Co. v. Baltimore City,* 106 Md. 561, 564-69, 68 A. 6, 8-10 (1907); *B. & O. R.R. Co. v. Chase, supra,* 43 Md. at 32-38. *See also Mutual Chemical Co. v. Mayor and City Council,* 33 F. Supp. 881 (D. Md. 1940), *modified by,* 122 F.2d 385 (4th Cir. 1941). The right to make riparian additions and extensions "was designed, manifestly, to embrace only structural improvements, such as wharves, piers, [or] warehouses . . ." *Hess v. Muir,* 65 Md. 586, 603, 6 A. 673, 675 (1866) (Alvey, C.J., concurring). *Accord, Caine v. Cantrell, supra,* 279 Md. at 399, 369 A.2d at 60. The privilege of wharfing out has been characterized by this Court through the use of various legal terminology in an attempt to explain the nature of that right. At an early date we said that "[t]he right of extending her lot, or wharfing out . . . under the acts of 1745, . . . was a franchise; a vested right, peculiar in its nature; a *quasi* property, of which . . . the plaintiff could not lawfully be deprived, without her consent." *Casey v. Inloes,* 1 Gill 430, 501 (1844). *Accord, B. & O. R.R. Co. v. Chase, supra,* 43 Md. at 26. We have likewise described this right as a statutory franchise or an easement, which are nothing more than alternative ways of depicting a right of property. *See West. Md. T. R. Co. v. Baltimore City, supra,* 106 Md. at 567-68, 68 A. at 9; *Horner v. Pleasants,* 66 Md. 475, 477, 7 A. 691, 692 (1887); *accord,* 2 H. Tiffany, *supra,* § 666, at 721.

Riparian rights, including the right to wharf out, have many of the same incidents which generally are associated with other property interests. They may be severed from the upland, *see Williams v. Skyline Dev. Corp.,* 265 Md. 130, 156-61, 288 A.2d 333, 348-51 (1972), and are, in some circumstances, taxed similar to other property interests. *See* 1 R. Clark, *supra,* § 72.1(a), at 442-43. See generally *West. Md. T. R. Co. v. Baltimore City, supra.* This Court has previously recognized that riparian rights are "subject . . . to [the] general rules and regulations [properly] imposed by the public authorities [as] necessary to protect the rights of the

public." *Causey v. Gray,* 250 Md. 380, 387, 243 A.2d 575, 581 (1968). *Accord, Potomac Sand & Gravel v. Governor, supra,* 266 Md. at 367-69, 293 A.2d at 246-47; *Owens v. Hubbard,* 260 Md. 146, 156, 271 A.2d 672, 678 (1970). There is, therefore, really no reason why this right should be treated differently from the other privileges pertaining to the ownership of real property, including restrictions which are associated with validly enacted zoning laws. *See* 1 R. Clark, *supra,* § 53.5(E). In fact, rights of the public and the reasons for zoning do not terminate at the shoreline; and so, the designated character of property, such as residential, cannot be preserved if a riparian owner is permitted to use the rights he acquires as such an owner to circumvent validly enacted restrictions. *See Brady v. Board of Appeals of Westport,* 348 Mass. 515, 204 N.E.2d 513, 518-19 (1965). Thus, we hold that the rights acquired as a riparian owner may be properly subjected to the zoning requirements validly enacted pursuant to the authority contained in Article 66B. *Accord, Poneleit v. Dudas,* 144 Conn. 413, 106 A.2d 479, 481-82 (1954); *Brady v. Board of Appeals of Westport, supra; Wynn v. Margate City,* 9 N.J. Misc. 1324, 157 A. 565, 566 (1931); *Taxpayers' Ass'n v. Board of Zoning Appeals,* 301 N.Y. 215, 93 N.E.2d 645, 647 (1950); 1 R. Clark, *supra.*

Our holding here that riparian rights may be included in and made subject to any valid zoning ordinance does not end the analysis because this property right, in form similar to an easement, is exercised on the land of another — the servient estate being owned by the State in this case. *See* 3 *American Law of Property,* § 15.35, at 875 n.11 (A. J. Casner ed. 1952); 2 H. Tiffany, *supra,* § 666, at 717-18, 722. As we previously discussed, our decision in *City of Baltimore v. State, supra,* recognizes that the zoning enabling act presently prohibits the application of local zoning ordinances to state-owned land; and whether the land held by the State but used by someone else may be subject to zoning is a question which has not been addressed by any previous decision of this Court, including *City of Baltimore v. State.*[11] Nor is it necessary to do so now, because it is apparent that

---

11. The Court of Special Appeals has, however, had this question before it. *See* City of Baltimore v. State Dep't, 38 Md. App. 570, 381 A.2d 1188 (1978);

under our previous cases the Acts of 1745 and 1862, as well as their successor enactments, not only granted riparian owners the right to use the land belonging to the State in erecting improvements, but vests such a substantial property interest in these improvements in the upland owner that the privileges which he possesses in them are tantamount to complete ownership.

When a riparian owner erects an improvement upon the tidal lands, this structure and the land on which it rests "become incident to the estate, as not inherently identical in nature with land, but, from being joined to it, and contributing to its uses and value legally identified .with it, as a fixture or a right of way, or other appurtenance that passes with the land." *Hess v. Muir,* 65 Md. 586, 598, 5 A. 540, 542 (1886). *Accord, Culley v. Hollis,* 180 Md. 372, 375, 25 A.2d 196, 197 (1942); *Goodsell v. Lawson,* 42 Md. 348, 362, 371 (1875). Whether improvements were built under the Act of 1745 or 1862, the General Assembly, by operation of these laws, relinquished all of its rights in the property. By doing so, they were deemed as having clothed the property with constitutional protection, which occurs, however, only when the riparian right has been utilized through completion of the improvement. *See, e.g., Williams v. Skyline Dev. Corp., supra,* 265 Md. at 155, 288 A.2d at 348; *Bd. of Pub. Works v. Larmar Corp., supra,* 262 Md. at 49-50, 277 A.2d at 437; *Owens v. Hubbard, supra,* 260 Md. at 156, 271 A.2d at 678; *City of Baltimore v. Canton Co., supra,* 186 Md. at 625, 47 A.2d at 778-79; *Hodson v. Nelson, supra,* 122 Md. at 338, 89 A. at 937. On the other hand, prior to their exercise, these riparian entitlements could have been altered or extinguished by the State, or its duly authorized agents, without the need to compensate the riparian owner. *See, e.g., City of Baltimore v. Canton Co., supra,* 186 Md. at 625, 47 A.2d at 779; *Culley v. Hollis, supra,* 180 Md. at 375-76, 25 A.2d at 197; *B. & O. R.R. Co. v. Chase, supra,* 43 Md. at 35. *See also* G. Power, *Chesapeake Bay in Legal Perspective,* 149-50 (1970). Thus, as we said in *Tome Institute v. Crothers,* 87 Md. 569, 584, 40 A.

Youngstown Cart. Co. v. N. Point Pen., 24 Md. App. 624, 332 A.2d 718, *cert. granted,* 275 Md. 758 (1975), *appeal dismissed,* for noncompliance with Md. Rule 830 (Aug. 1, 1975).

261, 266 (1898): "[w]hen these extensions were made, they became statutory additions to the original lots, and were held by the same title. In fact, they were the original lots made larger. Their legal identity was not changed by an increase of their dimensions."

Two of our previous decisions are of particular interest to our discussion here for they aptly demonstrate the extent to which the 1745 and 1862 Acts have been construed as placing the utilized tidal lands in the hands of the riparian owner. In *Horner v. Pleasants,* 66 Md. 475, 7 A. 691 (1887), we dealt with a purchaser of a riparian lot and attached wharf who refused to perform his contract of purchase because his title search indicated that the seller did not hold the fee in the land on which the wharf rested, but that ownership was in the State. In ordering specific performance, this Court held that, although at the time the wharf was built it was still possible to obtain a patent in fee for lands beneath the navigable waters,[12] under the Act of 1745, any improvements

> [w]hen made ... were declared to be the right of such improvers forever. In order to effect this object *it was not necessary, to grant a technical fee in the land covered by water.* But the *State did grant a perpetual use of such land ... and* this valuable license or franchise, *as long as used, she can no more annul than a patent in fee. [Id.* at 477 [692] (emphasis supplied).]

In *West. Md. T. R. Co. v. Baltimore City,* 106 Md. 561, 68 A. 6 (1907), we addressed these Acts as they relate to the city's power of taxation. The appellant had erected two valuable piers into the Patapsco River from land it owned in Baltimore City. However, these piers were constructed in such a manner that they stretched into the water beyond the city limits. The question there before us was whether the city's assessment authority encompassed these improvements. After reviewing the relevant precedents, we held that since the piers as constructed were, by virtue of the 1862 Act, extensions of the

---

12. *See* note 9, *supra.*

dry land which was situated within Baltimore's boundaries, the city's jurisdiction reached them for the purposes of taxation, police and fire protection. *Id.* at 571 [10-11]. To hold otherwise, we observed, would have permitted riparian landowners, by exercise of their statutory rights, to cut off the city from its valuable waterfront. *Id.* at 566-67 [10].

Reverting to a consideration of the present case, what we have before us is a policy decision which has existed for over two centuries — when improvements are made into the navigable waters by a riparian proprietor, the land utilized in their construction, which prior to completion belonged to the State, for all practical purposes becomes a part of his fast land. Thus, any limitation upon the county's ability to zone which arises because the land in question belongs to the State does not apply to improvements attached to riparian land. Our conclusion expressed here is supported by the fact that the General Assembly, in light of our consistent construction of section 46 and its predecessors (all now repealed), enacted a strikingly similar provision in the Wetlands Act of 1970. *See* 1970 Md. Laws, ch. 241. Codified as section 9-201 of the Natural Resources Article (1974, 1979 Cum. Supp.), this provision states in pertinent part:

> A person who is the owner of land bounding on navigable water ... may make improvements into the water in front of the land to preserve that person's access to the navigable water or protect the shore of that person against erosion. After an improvement has been constructed, it is the property of the owner of the land to which it is attached.

A comparison of this language with its predecessors reveals that, in most respects, the riparian right granted in 1862, though that Act was repealed, has been carried forward and is alive in the Wetlands law. Whenever the General Assembly re-enacts a statute, which has been the subject of numerous constructions by this Court, in substantially the same terms, we will assume, absent any indication to the contrary, that it acquiesces in our prior interpretation as expressing the legislative intent. *See, e.g., Macke Co. v. St. Dep't of Assess.*

*& T.,* 264 Md. 121, 132-33, 285 A.2d 593, 599 (1972); *Mahoney v. Sup. of Elections,* 205 Md. 380, 387, 109 A.2d 110, 114 (1954). Therefore, improvements erected pursuant to the grant contained in section 9-201 are extensions of the dry land to the same extent as those built under its predecessors, and are accorded the same protections and are subject to the same restrictions as developed in our prior cases.[13] In the final analysis, we hold that Calvert County has the authority to reasonably regulate through zoning the exercise of the riparian right to wharf out because, under law dating back for more than 200 years, this right, when exercised, is nothing more than an extension of the shore land.[14]

Although we agree with the trial judge's statement of the question presented in this case, and ordinarily would affirm his order resolving it, we believe that the declaration as made, and as is quoted in the initial portion of this opinion, may be subject to an interpretation which is broader in scope than the issue presented; thus, we will direct a modification of the declaration in accordance with, and as limited by, the views we express here.

> *Judgment of the Court of Special Appeals reversed, with direction to it to vacate the declaratory judgment entered by the Circuit Court for Calvert County and remand the case to that court with instructions to enter a declaratory judgment in accordance with this opinion.*
>
> *Costs to be paid by Harbor Island Marina, Inc.*

13. This, however, does not mean that additional restrictions have not been imposed on this right by the Wetlands Act, an issue which we need not reach in this case.

14. At oral argument in this Court, the appellant disclaimed any intention to urge that either the Federal government or the General Assembly has pre-empted the countys' and other political subdivisions' right to zone in the manner pertinent here. Consequently, we do not address any possible pre-emption issue. We further note that the State, in its amicus brief supporting Calvert County's exercise of its zoning power in this case, asserted that the General Assembly has not pre-empted the power to regulate by zoning the exercise of the riparian right to wharf out.